IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NATASHA MARSHALL,

          Plaintiff,

v.

          3:14-cv-01333-PK

POLLIN HOTELS II, LLC,

          OPINION AND ORDER

          Defendant.

PAPAK, Magistrate Judge:

Plaintiff Natasha Marshall brings this employment action against defendant Pollin Hotels II, LLC ("Pollin"), asserting claims for unpaid overtime wages, unlawful wage deductions, late payment of wages, failure to provide reasonable safety accommodations, and wrongful discharge.[1] Now before the court are Pollin's Motion for Summary Judgment (#32) and Marshall's Motion for Partial Summary Judgment (#40). For the reasons provided below, both motions are granted in part and denied in part.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position either by citation to specific evidence of record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations

---

[1] Marshall pleaded failure to provide reasonable safety accommodations and constructive discharge as a single cause of action, but they are more appropriately considered as separate claims. *See* Or. Rev. Stat. § 659A.290(b)-(c).

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," by showing that the evidence of record does not establish either the presence or absence of such a dispute, or by showing that an opposing party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R. Civ. P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 116 S. Ct. 1261 (1996). In evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed. R. Civ. P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## BACKGROUND[2]

### I.   The Parties

Marshall began working for Pollin at the Sheraton Portland Airport Hotel in Portland, Oregon (the "Hotel") on or about April 11, 2012. Marshall frequently worked over 40 hours a week and was paid an overtime rate for at least some of that time. Stuart Ticknor was the

---

[2] Except where expressly indicated otherwise, I construe the evidentiary record according to the legal standard governing motions for summary judgment under Federal Civil Procedure Rule 56.

Assistant General Manager at the Hotel at all relevant times. Melissa Smith was Pollin's Human Resources Director at all relevant times.

## II. Time Clock and Meal Break Issues

Upon Marshall's hire, she agreed to accurately record her time by punching in and out on a time clock at the start and end of her work and lunch periods. Marshall's supervisors instructed her to take a 30-minute lunch break near the middle of any shift over six hours long. Marshall understood that her lunch breaks were unpaid. Importantly, when Marshall took a lunch break that lasted less than 30 minutes, the break was still unpaid.

## III. Wage Deductions

Pollin made deductions from Marshall's wages to satisfy four writs of garnishment. Asset Recovery and Investigations ("Asset Recovery") was the garnishor on three of the writs. Asset Recovery served Pollin with the first writ on March 22, 2013. That writ was defective in that it did not contain the garnishor's address. As a result, there was a delay between the time Marshall's wages were deducted for the writ and the time the deducted amounts were actually paid over to Asset Recovery.

The State of Oregon also garnished Marshall's wages for personal income taxes she owed. Both the Oregon writ and the other two Asset Recovery writs properly contained the garnishor's address. Consequently, there was no delay in paying the amounts deducted for those writs to the garnishors.

Pollin also withheld taxes for Old-Age, Survivors, and Disability Insurance ("OASDI") and Medicare benefits from Marshall's wages. Those withholdings related to Marshall's receipt of short-term disability payments from a third-party provider. In some instances, the amount of the withholdings exceeded what was permissible under applicable law.

## IV.    Domestic Violence Incidents and Safety Accommodations

On or about May 24, 2013, Marshall informed Smith that she had recently broken up with her boyfriend, Timothy Glaze, because he had assaulted her. She further informed Smith that she had left the home she was sharing with Glaze and was staying with a friend. Marshall asked Smith to keep all of that information confidential. Given the recent events and resulting change in Marshall's living situation, Marshall also asked Smith to have her disability checks[3] sent to the Hotel. Smith responded as follows:

> I will not say anything, however, I seriously hope that you pressed charges and filed a restraining order. I also hope that this was the first and last time this happened to you. You are an amazing, beautiful, kind and very special person. If I can be of any other assistance, *please* let me know.

Smith Decl. Ex. 10, at 1 (#34-10).

This was the first time Pollin learned Marshall was a victim of domestic violence. Smith honored Marshall's requests and did not discuss the incident with anyone else at the Hotel. She also made Marshall's disability checks available for pickup at the Hotel.

As far as Smith knew, Marshall had in fact ended her relationship with Glaze in May of 2013. That belief was supported by the fact that Marshall subsequently asked Smith to remove Glaze from her emergency-contact listing and to have Marshall's disability checks sent to a different residential address. There was no overt indication at this point that Glaze posed a threat to Marshall at the Hotel.

Marshall began a short-term disability leave on or about May 26, 2013. She returned to work on July 8, 2013. She was promoted to front-desk supervisor in August of 2013.

---

[3] Presumably, the disability checks were for Marshall's disability leave that began on May 26, 2013.

On or about December 15, 2013, Marshall failed to show up for work, and as explained below, she would never again work another shift at the Hotel. That same day, Marshall sent Ticknor the following email:

> Let me start by saying I am so sorry for today. Not keeping you in the loop isn't my style at all. I always make sure top have good communication with u. Today wasn't normal for me though.
>
> Please keep in confidence what I'm sharing with u (Melissa can know). I don't feel safe at work. My ex seen me Sat night with my girls and flipped out on me. He beat me up. He has been texting me threats non stop. Threatening my life, safety, friends, family and anything and everyone that has anything to do with me that he knows. When I showed up to work today. He was there waiting for me. I sped off not looking back. After lastnight I couldn't take any chances because I dont know what he is gonna do. I am very scared/concerned. At this point I cannot come to work. I have never felt like this before in my life. I'm way out in the country at a safe house until I figure it out.

Ticknor Decl. Ex. 5, at 1 (#35-5).

This was the first time Ticknor learned Marshall was a victim of domestic violence. Ticknor immediately responded as follows: "First and foremost is the issue of your safety. Please do not compromise anything in regard to your safety. I am going to CC Melissa into this communication. I will plan on you being absent (excused) tomorrow." *Id.* Smith also responded that same day, stating as follow:

> First, are you okay? Have you/are you going to seek medical treatment? Second, have you/are you going to press charges/file a restraining order? We will do everything we can to keep you safe at work, a restraining order will help. I believe we can trespass him from the property without it, but will double check. Third, please know that you are very important to us and I am here to help anyway I can. I will be in office at 9:30 if you want to talk. Take care of you and your family.

Smith Decl. Ex. 12, at 1 (#34-12). Smith followed up with Marshall less than three hours later, confirming that Pollin could trespass her assailant and asking if it was Glaze.[4] Smith further informed Marshall that she needed the assailant's address so she could send notice of the trespass order.

Smith sent Marshall yet another email that same day, stating: "I know you are feeling hopeless, but you are not alone. I want to help you and I think I can if you will let me." Smith Decl. Ex. 13, (#34-13). Ticknor also followed up with Marshall that afternoon, asking if she was alright. Marshall responded as follows:

> :'(I'm not ok at all. I'm so messed up and not together. I am being stalked, taunted and tormented. I am scared to communicate with others because I dont know who is talking to him. He has went to my parents and lil sisters looking for me. He has been calling the hotel because hes texting me telling me stuff like" I can leave now cuz your off today". He's Just crazy and I can't trust him.
>
> This isn't the first time he has hit me!! He has never went to this extreme though. I'm lost Stu!! He is going to cause a scene with me @ work and I dont feel safe knowing that if I'm there he will know. He is going to do something to me. I'm sorry for putting everyone thru this. People having to cover for me etc. I love my job but I cannot be there. He is gonna hurt me! I'm so sorry :'(!!!!

Ticknor Decl. Ex. 6 (#35-6). Ticknor was not sure what Marshall's email meant regarding her ability to be at work, and he was unable to reach her by phone.

Two days later, on December 18, 2013, Smith emailed Marshall and asked her to call the Hotel. Marshall said she would call that day, but she did not. The next day, Smith sent Marshall the following email:

> We are very concerned about you and your welfare. Your sporadic communication with us only heightens that. I am confused by some of your comments in your emails on whether you plan on returning to work. I believe that

---

[4] There is no evidence that Marshall ever responded and affirmatively identified Glaze as the assailant. Indeed, the parties have not cited any evidence identifying the culprit of the December 2013 attack and the subsequent threats. Therefore, I will identify that individual as "the assailant" throughout the remainder of this Opinion and Order.

I can help you personally and put systems in place for you to return to work safely, but I can't do that without speaking to you. Please call me today so we can discuss. You can call me in the office or on my cell phone, both numbers are listed in my signature line.

Smith Decl. Ex. 15 (#34-15). Four days later, Marshall responded as follows: "Until my safety isn't at risk. I cannot return to work. I'm terrified after what has happened so far. I can have my sister come to pick up my final check. Thank you for everything!" Smith Decl. Ex. 16 (#34-16).

Smith understood Marshall's reference to her "final check" as a resignation and responded with the following email:

Natasha,

We are so sorry that you are going through all of this. We too, are very concerned for your safety. I hope that you have contacted the police, filed a report, a restraining order, emergency housing and counseling to help you.

I will consider this email your resignation. Please keep in contact with us, so we may know you are alright.

You were selected as our Associate of the Quarter. I have your award and will leave at the front desk, so that your sister may come and pick it up for you at her convenience. She can also pick up your final manual check for, NET$ 122.34, see attached.

We wish you all the best and please know that you are in our thoughts.

Melissa Smith

*Id.*

Marshall responded as follows: "I can't quit Melissa!! My emotions are out of whack. I need my job! Is it to late to figure out a plan for me to return. I can't let my team down and I love you and Stu." *Id.*

In response, Smith told Marshall that her previous emails had led Smith to believe that she had resigned her position and if she wanted to keep her job, she needed to speak with Smith that day. Marshall then called Smith and accepted Smith's offer to accompany her to file charges

OPINION AND ORDER—PAGE 7

and get a restraining order. Marshall also promised to email Smith her ex-boyfriend's address so that Pollin could get the trespass order in place.

However, three days later, Marshall cancelled her meeting with Smith to file charges and talk to a counselor. Marshall informed Smith that she did not want to press charges or talk to anyone about the incident. Marshall stated that she expected to obtain her assailant's address that day, but she further stated that she was concerned about sending the notice and did not understand the need for it.

Smith responded by telling Marshall that she would hold off on sending the trespass notice. Smith additionally provided Marshall with the information for the domestic-violence clinic where she had made an appointment for her. Smith also told Marshall to keep in contact with her and Ticknor and let them know what her plans were.

Marshall emailed Ticknor that same day and asked to come back to work on December 29, 2013. Pollin scheduled Marshall to work on December 29 as she requested, but Marshall called in sick. On December 31, 2013, Marshall again emailed Ticknor to schedule a shift, this time for January 1, 2014. Ticknor obliged, but Marshall failed to show up for that shift or explain her absence. Marshall also failed to show up or explain her absence for subsequent shifts she was scheduled for.

On January 6, 2014, Smith emailed Marshall about her continued failure to report to work or contact her supervisors and stated that unless Marshall contacted Smith to explain her actions, Marshall would be considered to have voluntarily quit. Marshall responded that same day, stating that she had thought she would be able to return to work but was still being stalked and had become fearful enough to relocate out of Portland. Marshall asked Smith to send her last check to a Eugene, Oregon address. Marshall's employment was terminated the following day.

Smith Decl. Ex. 20 (#34-20). Marshall's termination form showed that the termination was voluntarily and that she was potentially eligible for rehire. *Id.*

## DISCUSSION

As stated above, Marshall asserts the following five causes of action (1) unpaid overtime wages, (2) unlawful wage deductions, (3) late payment of wages, (4) failure to provide reasonable safety accommodations, and (5) wrongful discharge. Pollin moves for summary judgment on each of Marshall's causes of action. Marshall moves for partial summary judgment establishing Pollin's liability for unpaid overtime wages, unlawful wage deductions, and late payment of wages. Marshall expressly reserves the amount of her damages for trial. I address each of Marshall's causes of action, separately, below.

I conclude that neither party is entitled to summary judgment on Marshall's claims for unpaid overtime. Marshall is entitled to partial summary judgment establishing Pollin's liability on her claims for unlawful deductions and late payment of wages to the extent those claims are based on deductions for the March 22, 2013 Asset Recovery writ of garnishment. Pollin is entitled to partial summary judgment on Marshall's claim for unlawful wage deductions to the extent the claim is based on deductions other than those for the March 22, 2013 Asset Recovery writ of garnishment. Pollin is also entitled to summary judgment on Marshall's claims for failure to provide reasonable safety accommodations and wrongful discharge.

### I.   Unpaid Overtime Wages

#### A.  Legal Standard

Marshall asserts her unpaid overtime claim solely under the FLSA. *See* Compl. ¶¶ 14-26 (#1-1). To prevail on an unpaid overtime claim under the FLSA, the plaintiff must prove the following four elements: (1) the uncompensated activity constitutes "work," (2) the time worked

is not *de minimis* and is reasonable in relation to the principal activity, (3) the employer had

actual or constructive knowledge of the plaintiff's overtime work, and (4) the amount of time

worked. *Dixon v. City of Forks*, No. C08-5189FDB, 2009 WL 1459447, at \*3-6 (W.D. Wash.

May 26, 2009) (citations omitted). Even if the plaintiff lacks records of hours worked, she can

nevertheless carry her burden on the final element by proving that she "performed work for

which [she] was improperly compensated" and producing "sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt.

Clemens Pottery Co.*, 328 U.S. 680, 688 (1946).

### B. The Parties' Arguments

The parties primarily dispute whether Marshall can establish the first element of her

unpaid overtime claim. Pollin argues that it is entitled to summary judgment on the claim

because Marshall has failed to identify any uncompensated periods of time that she worked.

Pollin further argues that it already paid Marshall for all of the alleged unpaid overtime periods.

Marshall argues that Pollin had a legal obligation to provide her with 30-minute meal

breaks. Marshall contends that when her meal breaks were interrupted (i.e. when they lasted less

than 30 minutes) Pollin was required to compensate Marshall for the entire break. According to

Marshall, if she had been properly compensated for all of her breaks that lasted less than 30

minutes, she would have accrued additional overtime. Marshall further argues that Pollin failed

to compensate her for some of the time that she actually logged on her time cards.

### C. Analysis

Neither party is entitled to summary judgment on Marshall's unpaid overtime claim.

Marshall's time card reports contain numerous time deductions for breaks that lasted less than 30

minutes, many of which lasted less than 20 minutes. ." *See* Baze Decl. Ex. 2, Ex. 3 (#41-2, #41-

3). It is undisputed that Pollin did not pay Marshall for those breaks. *See* Ticknor Decl. ¶ 5 (#35) ("Pollin's policy was to pay for all time clocked in and out . . . .").

The FLSA does not require employers to provide meal breaks. *See Gessele v. Jack in the Box, Inc.*, No. 3:1 0-CV-00960-ST, 2013 WL 1326538, at *6 (D. Or. Apr. 1, 2013) (citing *California Dairies Inc. v. RSUI Indem. Co.*, 617 F.Supp.2d 1023, 1043 (E.D. Cal. 2009)); *Nelson v. Waste Mgmt. of Alameda Cty., Inc.*, No. C 99-0120 SI, 2000 WL 868523, at *3 (N.D. Cal. June 19, 2000), *aff'd*, 33 F. App'x 273 (9th Cir. 2002). However, the FLSA does require payment of overtime wages for all "hours worked" in excess of 40 hours per week. 29 U.S.C. § 207(a)(1).

A "bona fide meal period" does not count as "hours worked." 29 C.F.R. § 785.19; *Gessele*, 2013 WL 1326538, at *6; *Nelson*, 2000 WL 868523, at *3. However, the Department of Labor's Wage and Hour Division ("WHD") draws an important distinction between "bona fide meal periods" and "rest periods." While bona fide meal periods may be unpaid, rest periods must be compensated. The applicable WHD policy statements[5] provide as follows:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. They must be counted as hours worked.

29 C.F.R. § 785.18

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

*Id.* § 785.19(a).

---

[5] The Department of Labor's interpretations of the FLSA are entitled to judicial deference. *See, e.g.*, *Gessele*, 2013 WL 1326563, at *23 (citing *Baldwin v. Trailer Inns, Inc.*, 266 F3d 1104, 1112 n.4 (9th Cir. 2001)).

OPINION AND ORDER—PAGE 11

The WHD's Field Operations Handbook provides a factor test to determine whether special conditions exist that are sufficient to qualify breaks shorter than 30 minutes as bona fide meal breaks.

> Meal periods of less than 30 minutes during which the employee is completely relieved for purposes of eating a meal may be bona fide — and thus not hours worked — when certain special conditions are present (Reg 785.19). The conditions reviewed to make this determination, which should be considered in context on a case-by-case basis, include:
>
> (a) Work-related interruptions to the meal period are sporadic and minimal.
>
> (b) Employees have sufficient time to eat a regular meal. Periods less than 20 minutes should be given special scrutiny to ensure that the time is sufficient to eat a regular meal under the circumstances presented.
>
> (c) The period involved is not just a short break for snacks and/or coffee but rather is a break to eat a full meal, comes at a time of the day or shift that meals are normally consumed, and occurs with no more frequency than is customary.
>
> (d) There is an agreement (e.g. CBA) between the employees and employer that the period of less than 30 minutes is sufficient to eat a regular meal.
>
> (e) Applicable State or local laws do not require lunch periods in excess of the period indicated.

Field Operations Handbook, § 31b23, *available at*

http://www.dol.gov/whd/FOH/FOH_Ch31.pdf.[6]

Thus, Pollin was required to compensate Marshall for breaks that lasted less than 30 minutes unless (1) Marshall was completely relieved from her work duties during those breaks and (2) "special conditions" were present.[7] *See* 29 C.F.R. §§ 785.18-.19(a).  Importantly, Pollin

---

[6] A 2007 policy statement from the WHD lists the same factors.  FLSA2007-1NA, *available at* http://www.dol.gov/whd/opinion/FLSANA/2007/2007_05_14_01NA_FLSA.htm.

[7] Although § 785.18 states that rest breaks typically last "about 20 minutes" or less, The Field Operation Handbook makes clear that breaks of less than 20 minutes, although particularly suspect, may qualify as bona fide meal breaks.  *Cf. Alvarez v. IBP, Inc.*, No. CT-98-5005-RHW, 2001 WL 34897841, at *14 (E.D. Wash. Sept. 14, 2001) ("29 C.F.R. § 785.18 provides that no

bears the burden of proving both complete relief from duty and the existence of special conditions.[8] *See id.* § 785.19(a); *Alvarez*, 2001 WL 34897841, at *14 (discussing the burden of proof (quoting *Bernard v. IBP*, 154 F.3d 259, 265 (5th Cir. 1999))).

The parties genuinely dispute whether Marshall was completely relieved from duty during her breaks. Marshall testified that when she clocked in from a lunch break of less than 30 minutes, it was because she was "required to perform work." Marshall Decl. ¶ 2 (#53). However, Ticknor testified that there was always someone to cover for Marshall during her breaks. Ticknor Decl. ¶ 3 (#58). That factual dispute precludes summary judgment for Pollin. *See* 29 C.F.R. § 785.19(a) ("The employee must be completely relieved from duty for the purposes of eating regular meals.").

I am not persuaded by Pollin's argument that it already paid Marshall for the periods of alleged overtime at issue in this litigation. In support of that argument, Pollin offers evidence that it paid Marshall $550 in response to a demand letter. According to Pollin, $550 is sufficient to cover approximately 9.5 hours at Marshall's overtime wage rate plus the statutory penalty for late payment of wages. However, the undisputed evidence establishes that the sum of all Marshall's unpaid breaks that lasted less than 30 minutes is far greater than 9.5 hours. *See* Plf.'s Reply 5-6 n.4 (#52) (citing Baze Decl. Ex. 2, Ex. 3 (#41-2, #41-3). Therefore, Pollin's post-

---

"special conditions" would permit an unpaid meal break of less than 20 minutes."), *adopted as modified*, 339 F.3d 894 (9th Cir. 2003).
[8] Some district courts within the Ninth Circuit apply a "predominate benefit test" in determining whether an employee was completely relieved from duty during a meal break. *Nelson*, 2000 WL 868523, at *3. The critical question under that test is whether the disputed time was spent primarily for the employer's benefit or for the employee's benefit. *Roy v. Cty. of Lexington, S. Carolina*, 141 F.3d 533, 544 (4th Cir. 1998) (citation omitted), *cited in*, *Alvarez*, 339 F.3d at 913. The defendant bears the burden of proof under the predominate benefit test as well. *Nelson*, 2000 WL 868523, at *3.

termination payment to Marshall does not entitle it to summary judgment on her unpaid overtime claim.

However, because Pollin has presented evidence of special conditions, summary judgment is not appropriate for Marshall either. The WHD's Field Operations Handbook informs my analysis. With respect to the first factor, Marshall testified that her lunch breaks were frequently and substantially interrupted by guest needs and employee absences. *See* Marshall Decl. ¶¶ 2-9 (#53). However, as stated above, Ticknor testified that there was always someone to cover for Marshall during her breaks. Ticknor Decl. ¶ 3 (#58). Ticknor further testified that some of the work tasks that allegedly interrupted Marshall's breaks were nothing more than "busy work" that was not required to be completed by any particular deadline. *Id.* at ¶ 6. Therefore, a reasonable trier of fact could find that work-related interruptions to Marshall's meal breaks were "sporadic and minimal." *See* Field Operations Handbook, § 31b23.

Regarding the second factor, Pollin has presented evidence that it consistently encouraged Marshall to take full, 30-minute lunch breaks. *See* Ticknor Decl. ¶¶ 2, 3, Ex. 1 (#48, #48-1); Smith Decl. ¶ 5 (#34). Because a reasonable trier of fact could believe Ticknor's testimony that somebody was always available to cover for Marshall during those breaks, a reasonable trier of fact could also find that Marshall always had "sufficient time to eat a regular meal." *See* Field Operations Handbook, § 31b23.

Moreover, Marshall's time cards show that she took the majority of her breaks "at a time of the day or shift that meals are normally consumed." *See* Baze Decl. Ex. 2, Ex. 3 (#41-2, #41-3). Therefore, a reasonable trier of fact could also find for Pollin on the third factor. *See* Field Operations Handbook, § 31b23.

With respect to the fourth factor, this is no evidence that Marshall and Pollin ever agreed that periods of less than 30 minutes were sufficient to eat a regular meal. *See* Field Operations Handbook, § 31b23. However, the absence of such an agreement is insufficient to warrant summary judgment in Marshall's favor.

Finally, regarding the fifth factor, Oregon law requires employers to provide employees a continuous 30-minute break for each work period over six hours. Or. Admin. R. 839-020-0050. However, this court has previously construed that rule as merely requiring employers to *provide* 30-minute breaks; it does not require employers to police their employees' breaks. *Weir v. Joly*, No. 3:10-CV-898-HZ, 2011 WL 6778764, at *7 (D. Or. Dec. 23, 2011). As the *Weir* court explained:

> Weir also seems to take the position that an employer must pay an employee for a break of less than 30 minutes, no matter the reason. For instance, if the employee took a 29–minute meal break and happened to clock in a minute before 30 minutes had passed, the employer must pay the employee for the entire 30 minutes. Although Oregon courts have not spoken on this issue, I do not agree with Weir's interpretation of the rule. The rule requires that employers "provide" a meal break of 30 continuous minutes during which the employee is relieved of all duties. OAR 839–020–0050. To require an employer to police when an employee clocks in and out would be an unreasonable burden on the employer. The outcome would be an employee who could take a proper meal break, but then demand that it [be] paid simply by clocking in early.

*Id.* at *7 (footnote omitted).[9] As stated above, Pollin has presented evidence that it provided Marshall with continuous 30-minute meal breaks. *See* Ticknor Decl. ¶¶ 2, 3, Ex. 1 (#48, #48-1); Smith Decl. ¶ 5 (#34).

Thus, viewing the evidence in the light most favorable to Pollin, a reasonable trier of fact could find that Marshall was always relieved from duty during her shortened meal breaks and

---

[9] Although the *Weir* court's analysis centered primarily on Oregon law, the plaintiff's claims in that case included an FLSA claim for unpaid overtime. *See* Compl. at ¶¶ 15, 26-27 (#1), *Weir*, 2010 WL 4853256.

those breaks were taken under special conditions. Consequently, Marshall is not entitled to summary judgment establishing Pollin's liability for unpaid overtime wages in relation to unpaid meal breaks.

Marshall also seeks partial summary judgment establishing Pollin's liability for unpaid overtime wages in relation to time for which she was actually clocked in but not paid. In support, Marshall offers evidence that she was not paid for 0.1 hours that she logged on April 29, 2012. Marshall also offers evidence that she was not compensated for 0.04 hours that she logged during the pay period running from May 1, 2012 through May15, 2012. Although Marshall's time cards for the above-mentioned periods accurately reflect the times she clocked in and out, the total amount of recorded time is slightly off.

The WHD permits employers to round hours worked under the FLSA. The relevant policy statement provides as follows:

"Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b).

Ticknor testified that, prior to 2013, Pollin used time card software that rounded logged time. Ticknor Decl. ¶ 6 (#48). Ticknor further testified that discrepancies caused by the rounding worked to Marshall's benefit at least as often as they worked to her detriment. *Id.* Therefore, a reasonable trier of fact could find that the discrepancies between Marshall's recorded hours and her actual pay was the result of permissible rounding. *See* 29 C.F.R. § 785.48(b).

Moreover, Marshall has only shown that she was uncompensated for 0.14 hours of logged time. Therefore, a reasonable trier of fact could also find that the uncompensated logged time is *de minimis* and, as such, did not require compensation under the FLSA. *See Alvarez*, 339 F.3d at 903; *Anderson*, 328 U.S. at 692 ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded [under the FLSA]."). Marshall is not entitled to partial summary judgment establishing Pollin's unpaid overtime liability in relation to time for which she was clocked in but not paid.[10]

In sum, neither party is entitled to summary judgment on Marshall's unpaid overtime claim.

## II.    Unlawful Wage Deductions

### A.  Legal Standard

To succeed on an unlawful wage deductions claim, the plaintiff must establish that the defendant made a deduction from the plaintiff's wages, that the deduction was not authorized by Oregon Revised Statutes section 652.610(3), and that the defendant thereby failed to pay all of the plaintiff's wages when due. *See Allen v. Cty. of Jackson Cty.*, 7 P.3d 739, 748 (Or. App. 2000). Section 652.610(3)(a) authorizes employers to deduct portions of employee wages when the employer is "required to do so by law."

---

[10] In opposition to Pollin's Motion for Summary Judgment, Marshall presented evidence that Pollin manually altered her time clock to show that she took lunches she did not actually take and to show that she clocked out from work earlier than she actually did. However, Marshall does not raise that argument in her Motion for Partial Summary Judgment as an additional basis of unpaid overtime wages liability. Therefore, I do not determine whether Marshall is entitled to partial summary judgment establishing Pollin's liability on her unpaid overtime claim for manually altering her time clock to show that she took lunches she did not actually take and to show that she clocked out from work earlier than she actually did.

## B. The Parties' Arguments

Pollin argues that it is entitled to summary judgment on Marshall's unlawful wage deductions claim because the deductions it made from Marshall's wages were authorized by law. Pollin further argues that Marshall's unlawful wage deductions claim is time-barred to the extent it is based on writs of garnishment. Pollin also contends that Marshall's unlawful wage deductions claim is preempted by federal law to the extent it is based on deductions for Medicare and OASDI taxes.

Marshall argues that the March 22, 2013 Asset Recovery writ of garnishment was invalid because it did not include the garnishor's address. As a result, Marshall argues, that writ could not serve as a basis for lawful wage deductions. Marshall also contends that Pollin failed to timely remit the wages it deducted for the March 22, 2013 writ to the garnishor. Marshall further argues that the amounts Pollin deducted for Medicare and OASDI taxes were greater than permitted by applicable law. Finally, Marshall argues that her unlawful wage deductions claim is not preempted by federal law because 26 U.S.C. § 6413 permits her to sue Pollin for overcollected taxes.

## C. Analysis

Marshall's unlawful wage deductions claim is based on withholdings for Medicare and OASDI taxes and deductions used to satisfy four separate writs of garnishment: (1) a March 22, 2013 Asset Recovery writ, (2) a July 13, 2013 Asset Recovery writ, (3) an October 1, 2013 Asset Recovery writ, and (4) an Oregon Department of Revenue writ. I address the writs of garnishment and the tax withholdings, separately, below.

Marshall is entitled to partial summary judgment establishing Pollin's liability on her on her unlawful wage deductions claim to the extent the claim is based on deductions for the March

22, 2013 Asset Recovery writ of garnishment. Pollin is entitled to partial summary judgment on the remainder of Marshall's unlawful wage deductions claim.

### 1. Deductions for Garnishments

At the outset, I reject Pollin's argument that Marshall's unlawful wage deductions claim is time-barred under Oregon Revised Statutes section 18.700(2) to the extent the claim is based on deductions for writs of garnishment. Section 18.700(2) provides that a debtor must challenge a garnishment within "120 days after a copy of the writ of garnishment is delivered to the debtor, if the garnishee is the employer of the debtor and the challenge is based on an exemption that is claimed for wages earned by the debtor from the garnishee" or within "30 days after a copy of the writ of garnishment is delivered to the debtor, if the challenge is made on any other basis." However, that provision is clearly limited to situations where the challenger (1) claims an exemption, (2) asserts that the amount specified in the writ of garnishment is greater than the total amount owed by the debtor, (3) asserts that property is not garnishable property, or (4), in the case of a third party, claims a possessory interest in the garnished property. *Id.* at § 18.700(5). Marshall does not assert an exemption, error in the amount of the writ, garnishment of property not subject to garnishment, or a third-party interest. Therefore, the limitations period in section 18.700(2) is inapposite.

Marshall is entitled to partial summary judgment establishing Pollin's liability on her unlawful wage deductions claim to the extent the claim is based on deductions for the March 22, 2013 Asset Recovery writ of garnishment. Pollin argues that it was required by law to garnish Marshall's wages in response to that writ. In support of that argument, Pollin cites Oregon Revised Statutes § 18.665(1), which provides as follows:

> The garnishee has no duty to determine whether . . . the writ of garnishment is valid. *If a garnishee response is required*, the garnishee must make a diligent

OPINION AND ORDER—PAGE 19

> effort to determine whether the garnishee is the employer of the debtor and
> whether the garnishee has possession, control or custody of any garnishable
> property of the debtor as described in ORS 18.615. If the garnishee has
> possession, control or custody of garnishable property, the garnishee must hold
> the property, or as much of the property as is necessary to satisfy the garnishment,
> as required by ORS 18.600 to 18.850, and thereafter make delivery of the
> property in the manner required by ORS 18.600 to 18.850.

*Id.* (emphasis added).

Pollin omitted the emphasized language from the portion of section 18.665(1) that it

quoted in its brief. That language is important because it shows that an employer is required by

law to hold and deliver an employee's garnishable property only if it is required to deliver a

garnishee response. *See also id.* at § 18.838 ("If the writ does not comply with Oregon law, the

writ is not effective to garnish any property of the Debtor, but you still must complete and

deliver the Garnishee Response."). Importantly, a garnishee "has no duty to prepare and deliver

a garnishee response if . . . [t]he garnishor fails to serve the garnishee with all items required

under ORS 18.650." *Id.* at § 18.682(2). One such item is a "writ of garnishment in substantially

the form provided by ORS 18.830." *Id.* at § 18.650(1)(a). The form provided by section 18.830

requires the address of the garnishor.

It is undisputed that Asset Recovery failed to include its address on the March 22, 2013

writ of garnishment. *See* Marshall Decl. Ex. 1, at 2 (#51-1). Therefore, Pollin was not required

to prepare and deliver a garnishee response to that writ. *See* Or. Rev. Stat. § 18.682(2). Nor was

the writ effective to garnish Marshall's wages. *See id.* at § 18.838. Consequently, Pollin was not

"required by law" to deduct Marshall's wages to satisfy the writ, and all such deductions

constituted unlawful wage deductions. *See id.* at § 652.610(3)(a). Marshall is entitled to

summary judgment establishing Pollin's liability on her unlawful wage deductions claim to the

extent the claim is based on deductions for the March 22, 2013 Asset Recovery writ of garnishment.

Conversely, the garnishor's address was included on the remaining writs of garnishment underlying Marshall's unlawful wage deductions claim. *See* Marshall Decl. Ex. 2 at 3, Ex. 3 at 3, Ex. 4 at 3 (#51-2 – #51-4). It is also undisputed that the wages deducted for those writs were timely remitted to the garnishors. Marshall does not present any other argument as to why deductions for those writs were unlawful.[11] As stated above, Oregon employers are generally required by law to hold and deliver garnishable property that is in their possession, custody, or control. Or. Rev. Stat. § 18.665(1). A reasonable trier of fact therefore could not find that deductions from Marshall's wages pursuant to the remaining writs were unlawful. *See id.* at § 652.610(3)(a) (authorizing employers to deduct employee wages when it is required to do so by law). Consequently, Pollin is entitled to partial summary judgment on Marshall's unlawful wage deductions claim to the extent the claim is based on the July 13, 2013 and October 1, 2013 Asset Recovery writs and the Oregon Department of Revenue writ.

---

[11] Pollin produced only the March 22, 2013 Asset Recovery writ during discovery. Marshall therefore argues that Federal Rule of Civil Procedure 37(c) requires the court to disregard all the other writs. Marshall misstates Rule 37(c). That rule does not unequivocally require the court to disregard evidence a party failed to produce in response to a discovery request. Rather, the rule grants the court broad discretion in deciding what sanctions are appropriate. *See* Fed. R. Civ. P. 37(c)(1)(C). Moreover, the rule makes clear that sanctions are not appropriate when the failure to disclose was substantially justified or harmless. *Id.* 37(c)(1). In this case, it is undisputed that Marshall received all of the writs prior to the beginning of this litigation. *See* Dozono Decl. Ex. 3 (#46-3); Smith Decl. Ex. 8 (#34-8). Marshall therefore cannot argue that she was somehow surprised by the existence of the other writs. Moreover, at oral argument, the court offered Marshall additional time to respond to the other writs, and Marshall declined. Consequently, Pollin's failure to produce the writs during discovery was harmless, and it is entitled to rely on them in litigating the present motions for summary judgment.

OPINION AND ORDER—PAGE 21

### 2. Tax Withholdings

Pollin is also entitled to partial summary judgment on Marshall's unlawful wage

deductions claim to the extent the claim is based on deductions for Medicare and OASDI taxes.

I agree with Pollin that those portions of the claim are preempted by federal law. In *Fredrickson*

*v. Starbucks*, this court determined that an Oregon unlawful wage deductions claim based on tax

withholdings was preempted by federal law. 980 F. Supp. 2d 1227 (D. Or. 2013). The plaintiffs

in that case were a class of Starbucks employees who alleged, *inter alia*, that Starbucks made

unlawful wage deductions by estimating the amount of its employees' tips and withholding state

and federal taxes based on the estimated amounts rather than amounts actually claimed by the

employees. *Id.* at 1233-34. The plaintiffs were not "challenging the validity of any federal or

state tax law or regulation." *Id.* at 1239. Nor were the plaintiffs seeking to recover the amounts

Starbucks withheld. *Id.* at 1239-40. Rather, they were only seeking to recover statutory

penalties under Oregon law. *Id.* The court nevertheless determined that the plaintiff's action was

a tax refund suit in disguise, and as such, it was preempted by federal law. *Id.* at 1236-45.

The *Fredrickson* court relied on section 7422 of the Internal Revenue Code, which

defines and restricts tax refund suits, in pertinent part, as follows:

> No suit or proceeding shall be maintained in any court for the recovery . . . *of any*
> *sum alleged to have been excessive or in any manner wrongfully collected*, until a
> claim for refund or credit has been duly filed with the Secretary, according to the
> provisions of law in that regard, and the regulations of the Secretary established in
> pursuance thereof.

26 U.S.C. § 7422(a) (emphasis added). Importantly, section 7422(f)(1) provides that tax refund

suits "may be maintained only against the United States." The *Fredrickson* court found that the

plaintiffs' suit fell squarely within section 7422's definition of a tax refund suit because it sought

to recover a "sum" that was allegedly wrongfully withheld from their wages.

OPINION AND ORDER—PAGE 22

The *Fredrickson* court also relied on the Ninth Circuit's holding in *Brennan v. SW. Airlines Co.*, 134 F.3d 1405 (9th Cir. 1998), *amended sub nom.*, 140 F.3d 849. The plaintiffs in that case were a class of airline passengers who brought state-law claims against three airline companies for collecting a tax that was not authorized by law. *Id.* at 1408. Focusing on the language of section 7422(a), the court determined, "the statute means that if someone wrongfully collects money as a tax, then a suit to recover the sum constitutes a tax refund suit, even if the sum did not literally constitute an 'internal revenue tax.'" *Id.* at 1410 (citation omitted). As in *Fredrickson* and *Brennan*, Marshall's unlawful wage deductions claim falls squarely within section 7422(a)'s definition of a tax refund suit, and is therefore preempted, to the extent the claim is based on tax withholdings.

Marshall's argument regarding 26 U.S.C. § 6413 does not change my conclusion. That provision instructs employers to reimburse employees for overcollected taxes. Marshall argues that section 6413 permits an employee to bring suit against her employer for overcollected taxes. In support, Marshall contends that the *Brennan* court held that similar language in 26 U.S.C. § 6415(c) provides a private right of action against tax collectors for refunds of overcollected amounts. I am unpersuaded.

The *Brennan* court held that section 6415(c) was inapplicable to the plaintiff's claim because it applies only to overcollections that result from clerical or mechanical errors. 134 F.3d at 1413-14. Because the court found that section 6415 was inapplicable, it did not consider whether it created a private right of action to recover overcollected amounts from the defendant airline companies.[12] However, several decisions relied on by the *Brennan* court clearly held that

---

[12] In her Sur-Response, Marshall states: "*Brennan* held that . . . § 6415 'allows a claim for mathematical and technical errors.'" Supp. Brief 2 (#61). I take issue with Marshall's representation and selective quoting of *Brennan*. The quoted language is found in a parenthetical

section 6415 does not create a private right of action. *See Kaucky v. SW. Airlines Co.*, 109 F.3d

349, 353 (7th Cir. 1997); *Sigmon v. SW. Airlines Co.*, 110 F.3d 1200, 1205 (5th Cir. 1997);

*Lehman*, 930 F. Supp. at 915; *accord Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 69 (3d

Cir. 2008). I agree with the reasoning of those decisions and, on that same reasoning, hold that

section 6413 does not create a private right of action against employers who fail to reimburse

employees for overcollected taxes. Rather, when an employer fails to reimburse its employee for

overcollected taxes, the employee's remedy is to file a claim against the United States for a

refund. *See* 26 C.F.R. § 31.6402(a)-2(b). Thus, section 6413 does not create an exception to the

preemptive effect of section 7422. Pollin is therefore entitled to summary judgment on

Marshall's unlawful wage deductions claim to the extent the claim is based on tax withholdings.

In sum, Marshall is entitled to partial summary judgment establishing Pollin's liability on

her unlawful wage deductions claim to the extent the claim is based on deductions for the March

22, 2013 Asset Recovery writ of garnishment. Pollin is entitled to partial summary judgment on

the remainder of Marshall's unlawful wage deductions claim.

## III.    Late Payment of Wages

### A. Legal Standard

Oregon Revised Statutes section 652.140 requires employers to pay all wages owed to an

employee within set time frames upon termination of employment. If the employee is

discharged or leaves by mutual agreement, all wages are due the next business day. *Id.* §

---

following a citation to *Lehman v. USAIR Group, Inc.*, 930 F. Supp. 912, 915 (S.D.N.Y.1996).
*See Brennan*, 134 F.3d at 1414. The full quote—as provided by the *Brennan* court—is as
follows: § 6415(c) *at most* allows a claim for mathematical and technical errors . . . ." *Id.*
(quoting *Lehman*, 930 F. Supp. at 915 (emphasis added)). Marshall omitted the emphasized
language. Moreover, the sentence immediately preceding the above-quoted text from *Lehman*
provides: "*§ 6415(c) does not create a private cause of action.*" *Lehman*, 930 F. Supp. at 915
(emphasis added). Thus, the *Brennan* court clearly did not hold that section 6415 "allows for a
claim for mathematical and technical errors." *Cf.* Supp. Brief 2 (#61).

652.140(1). If the employee quits with notice, all wages are due immediately at the end of employment. *Id.* § 652.140(2)(a). If the employee quits without notice, all wages are due by the earlier of the next payday or five days after the end of employment. *Id.* § 652.140(2)(b).

When an employer fails to pay wages as required by section 652.140, it is subject to the statutory penalty prescribed by section 652.150. That penalty is limited to "100 percent of the employee's unpaid wages or compensation unless the employer fails to pay the full amount of the employee's unpaid wages or compensation within 12 days after receiving [a written notice of nonpayment]." *Id.* § 652.150(2)(a).

### B. The Parties' Arguments

Pollin argues that it is entitled to summary judgment on Marshall's late payment of wages claim because it issued the above-mentioned $550 post-termination payment to Marshall within 12 days of receiving Marshall's written notice of nonpayment. Pollin further argues that it is entitled to summary judgment on Marshall's late payment of wages claim because Marshall failed to report the hours she worked, thereby preventing Pollin from calculating the amount of compensation allegedly owed. Finally, Pollin argues that it is entitled to summary judgment on Marshall's late payment of wages claim because Marshall failed to present any evidence that Pollin's failure to pay was willful.

Marshall argues that she is entitled to summary judgment on her late payment of wages claim to the same extent she is entitled to summary judgment on her claims for unpaid overtime wages and unlawful wage deductions.

### C. Analysis

Marshall's late payment of wages claim is completely dependent on her claims for unpaid overtime wages and unlawful wage deductions. Marshall is therefore entitled to partial summary

judgment establishing Pollin's liability on her late payment of wages claim to the extent the claim

is based on deductions for the March 22, 2013 Asset Recovery writ of garnishment. *See Wilson*

*v. Smurfit Newsprint Corp.*, 107 P.3d 61, 75 (Or. App. 2005) (holding that unlawful wage

deductions subject a defendant to liability for penalty wages under Oregon Revised Statutes

sections 652.150 and 652.615.)

I reject Pollin's argument that its post-termination payment to Marshall entitles it to

summary judgment on Marshall's late payment of wages claim. As explained above, the

undisputed evidence of record establishes that the post-termination payment was insufficient to

cover all of Marshall's unpaid breaks that lasted less than 30 minutes. Or. Rev. Stat. §

652.150(2)(a) (limiting the penalty for late payment of wages to 100 percent of the unpaid wages

only if the employer paid the full amount of the employee's unpaid wages within 12 days of

receiving written notice).

Pollin's argument that Marshall failed to record the hours for which she now seeks

compensation is even less persuasive. The very essence of Marshall's claims is that Pollin failed

to pay her for time when she was actually clocked in and for discrete break periods when she was

required to clock out. Therefore, Pollin's contention that it cannot calculate the amount of

compensation allegedly owed is meritless.

Finally, I also reject Pollin's argument that Marshall failed to present sufficient evidence

that Pollin acted willfully in failing to pay Marshall her wages upon termination. In the context

of late payment of wages, willfulness does not require malice. *Young v. State*, 133 P.3d 915, 919

(Or. 2006) (citing *Sabin v. Willamette–Western Corp.*, 557 P.2d 1344 (Or. 1976)). Rather, it

merely requires proof "that the act or omission was purposeful and not the product of

inadvertence." *Id.* (citing *Sabin*, 557 P.2d 1344). An employer is deemed to act willfully when

it engages in conduct that violates an unambiguous law. *See id.* at 919-20. It is undisputed that Pollin knew that the March 22, 2013 Asset Recovery garnishment did not contain an address for the garnishor. *See* Baze Decl. Ex. 26, at 8 (#41-26). As explained above, deductions for that writ violated Oregon law. Consequently, a reasonable trier of fact would be required to find that Pollin acted willfully in failing to pay Marshall those portions of her wages upon termination.

In sum, Marshall is entitled to partial summary judgment establishing Pollin's liability on her late payment of wages claim to the same extent she is entitled to partial summary judgment establishing Pollin's liability on her claims for unpaid overtime wages and unlawful deductions.

## IV.    Failure to Provide Reasonable Safety Accommodations

### A. Legal Standard

Oregon Revised Statutes section 659A.290(2)(c) provides:

> It is an unlawful employment practice for an employer to . . . [r]efuse to make a reasonable safety accommodation requested by an individual who is a victim of domestic violence, harassment, sexual assault or stalking, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer, as determined under ORS 659A.121.

### B. The Parties' Arguments

Pollin argues that it is entitled to summary judgment on Marshall's claim for failure to provide reasonable safety accommodations because Marshall never requested an accommodation as required by the statute. In response, Marshall argues that she asked Pollin to "figure out a plan" for her to return to work and Pollin failed to do so.

### C. Analysis

Pollin is entitled to summary judgment on Marshall's claim for failure to provide reasonable safety accommodations. The plain language of section 659A.290(2)(c) requires an employee to request a safety accommodation before an employer can be found liable for

violating the statute. The only request identified by Marshall is the December 23, 2013 email from her to Smith, in which Marshall asked: "Is it to[o] late to figure out a plan for me to return[?]" Smith Decl. Ex. 16, at 1 (#34-16). That same day, Smith offered to accompany Marshall to file charges and obtain a restraining order. *See* Smith Decl. ¶ 19 (#34). Smith further offered to obtain a trespass order to prevent Marshall's assailant from coming to the hotel. *See* Smith Decl. ¶¶ 16, 19, Ex. 13, at 2 (#34, #34-13). Therefore, Pollin unquestionably honored Marshall's request to "figure out a plan" for her return to work.

However, Marshall stonewalled the plan. Marshall initially accepted Smith's offer to accompany her to file charges and obtain a restraining order. *See* Smith Decl. ¶ 19 (#34). She also promised to provide Smith her assailant's address for the purpose of sending notice of the trespass order. *See id.* However, Marshall then cancelled her meeting with Smith to file charges. *See id.* at ¶ 16. She also expressed reservations about the trespass notice, prompting Smith to hold off on sending it. *See* Smith Decl. ¶ 20, Ex. 17 (#34, #34-17). Thus, a reasonable trier of fact could not find that Pollin refused to figure out a plan for Marshall's return to work. Therefore, Pollin is entitled to summary judgment on Marshall's claim for failure to provide reasonable safety accommodations.

## V.  Wrongful Discharge

### A. Legal Standard

Oregon Revised Statutes section 659A.290(2)(b) prohibits discharging an employee because the employee is a victim of domestic violence, harassment, sexual assault, or stalking. Marshall proceeds on a theory of constructive discharge. In order to establish constructive discharge, a plaintiff must prove the following four elements:

> (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a

reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

*McGanty v. Staudenraus*, 901 P.2d 841, 856-57 (Or. 1995) (en banc) (footnotes omitted).

### B.  The Parties' Arguments

Pollin argues that it is entitled to summary judgment on Marshall's wrongful discharge claim because Marshall cannot establish the first or third element of constructive discharge. Marshall does not directly respond to Pollin's arguments regarding the first and third elements of constructive discharge.  Rather, Marshall generally argues that Pollin failed to protect her from her assailant at work, thereby effectively terminating her employment.

### C.  Analysis

Pollin is entitled to summary judgment on Marshall's wrongful discharge claim.  Marshall has failed to present any evidence that would permit a reasonable trier of fact to find that Pollin intentionally created or intentionally maintained a workplace that was unsafe for Marshall.  It is undisputed that Pollin did not create the dangerous condition Marshall faced at the Hotel. Marshall's assailant created the condition.

Moreover, Marshall cannot establish that Pollin intentionally maintained working conditions that permitted Marshall's assailant to continue to pose a threat to her at the Hotel.  In order to make that showing, Marshall would have to prove that Pollin desired Marshall's assailant to continue to pose a threat to her at the Hotel or that Pollin was substantially certain that Marshall's assailant would continue to pose a threat to her at the Hotel as a result of Pollin's

actions. *See id.* at 855 (quoting Restatement (Second) of Torts § 8A (1965)).[13] There is simply no evidence to that effect in the record.

To the contrary, the evidence of record shows that Pollin made numerous attempts to eliminate the threat posed by Marshall's assailant at the Hotel. As stated above, Smith repeatedly attempted to help Marshall obtain a restraining order and counseling. Marshall rebuked those attempts. Smith also offered to trespass the assailant, but Marshall expressed reservation about that as well. Smith even expressly told Marshall that she wanted to put systems in place to protect her, but she needed Marshall to communicate with her in order to do that. *See* Smith Decl. Ex. 15 (#34-15) ("I can help you personally and put systems in place for you to return to work safely, but I can't do that without speaking to you. Please call me today so we can discuss."). However, Marshall failed to communicate with Smith, thereby thwarting Smith's ability to help Marshall safely return to work.

Thus, the evidence of record would not permit a reasonable trier of fact to find that Pollin intentionally maintained working conditions that permitted Marshall's assailant to continue to pose a threat to her at the Hotel. Marshall has therefore failed to generate a genuine issue of material fact on the first element of constructive discharge. Consequently, Pollin is entitled to summary judgment on Marshall's wrongful discharge claim.

## CONCLUSION

For the reasons provided above, both Pollin's Motion for Summary Judgment (#32) and Marshall's Motion for Partial Summary Judgment (#40) are granted in part and denied in part.

---

[13] The *McGanty* court provided a detailed discussion of the meaning of intent in the context of constructive discharge. *See id.* at 854-57. Although that discussion pertained to the third element of constructive discharge, the court made clear that the first element requires intent as well. *See id.* at 856 n.8. I therefore find that the same definition of intent also applies to the first element of constructive discharge.

Neither party is granted summary judgment on Marshall's claims for unpaid overtime. Marshall

is granted partial summary judgment establishing Pollin's liability on her claims for unlawful

deductions and late payment of wages to the extent those claims are based on deductions for the

March 22, 2013 Asset Recovery writ of garnishment. Pollin is granted summary judgment on

Marshall's claim for unlawful wage deductions to the extent the claim is based on deductions

other than those for the March 22, 2013 Asset Recovery writ of garnishment. Pollin is also

granted summary judgment on Marshall's claims for failure to provide reasonable safety

accommodations and wrongful discharge.


Dated this 16th day of March, 2016.


/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge